```
                 UNITED STATES DISTRICT COURT
                    DISTRICT OF VERMONT

CHARLOTTE DENNETT            :
                             :
     v.                      :        CIVIL NO. 1:05CV47
                             :
CENTRAL INTELLIGENCE AGENCY  :
_____:
```

<u>RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>
(Paper 12)

<u>Background</u>

Pro se plaintiff Charlotte Dennett is an attorney who is researching and writing a book about the Middle East and her father, the late Daniel C. Dennett.  Mr. Dennett served in two Central Intelligence Agency (hereinafter "CIA") predecessor agencies, the Office of Strategic Services and Central Intelligence Group from 1943 until his death in a plane crash in Ethiopia in 1947.  <u>See</u> Complaint for Injunctive Relief (Paper 1) at para. 3.

By a letter dated February 27, 1999, the plaintiff requested information about her father from the CIA pursuant to the Freedom of Information Act, 5 U.S.C. § 552 (hereinafter "FOIA").  Generally, she sought: (1) "Personnel Records," (2) "Reports by or about [her] father from 1943 to 1947," (3) "Foreign Activity Correlation files," and (4) "Loy Henderson papers, 1946-47."  <u>See</u> <u>generally</u> Plaintiff's Request (appended to Paper 13 as Ex. C).

On May 4, 1999, the defendant acknowledged the plaintiff's correspondence and "accepted [her] request pertaining to records

index to [her] fathers name, Daniel C. Dennett [sic]."  <u>See</u>
Strickland Letter (appended to Paper 13, Ex. D at 2).  In
addition, the CIA informed the plaintiff that "the majority of
CIA predecessor holdings" had been turned over to the National
Archives Records Administration and that the "Loy Henderson
papers" were held by the Department of State.  <u>See</u> Declaration of
CIA Information Review Officer Marilyn A. Dorn (Paper 13)
(hereinafter "Dorn Declaration") at paras. 30-31.

On or about June 7, 2001, the CIA processed the plaintiff's
FOIA request, releasing 20 documents in their entirety and 304
documents in part, with classified information redacted pursuant
to FOIA exemptions (b)(1) and (b)(3).  Also citing these
exemptions, the CIA withheld in full a number of other documents.
Lastly, the CIA forwarded plaintiff's FOIA request to other
government agencies which it had identified as possibly holding
documents responsive to her request.  <u>See</u> Dorn Declaration at
para. 33.

On August 17, 2001, the plaintiff filed an administrative
appeal of the CIA's determinations.  The CIA completed processing
the plaintiff's appeal on August 9, 2005.  On appeal, the CIA
decided it could release to plaintiff an additional 94 documents
in full and 249 documents with redactions based on FOIA
exemptions (b)(1) and (b)(3).  The agency continued to hold two

documents in their entirety based on these same exemptions.  See
Dorn Declaration at para. 41.

<u>Discussion</u>

The Court may grant summary judgment only where there is no
genuine issue as to any material fact, and the moving party is
entitled to judgment as a matter of law.  <u>See</u> Fed. R. Civ. P.
56(c); <u>see</u> <u>also</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23
(1986).  The moving party has an initial burden of informing the
Court of the basis for its motion and of identifying the absence
of a genuine issue of material fact.  <u>See</u>, <u>e.g.</u>, <u>Carlton v.</u>
<u>Mystic Transp., Inc.</u>, 202 F.3d 129, 133 (2d Cir. 2000).  Where,
as here a motion for summary judgment is supported by affidavits
and other documentary evidence, however, the opposing party must
set forth specific facts showing there is a genuine, material
issue for trial.  <u>See</u> <u>Forsyth v. Fed. Employment & Guidance</u>
<u>Serv.</u>, 409 F.3d 565, 569-70 (2d Cir. 2005); <u>Rexnord Holdings,</u>
<u>Inc. v. Bidermann</u>, 21 F.3d 522, 526 (2d Cir. 1994).

Stated another way, a court's role when considering a motion
for summary judgment is to determine whether there are genuine
unresolved issues of material fact to be tried.  <u>See</u>, <u>e.g.</u>,
<u>Patterson v. County of Oneida</u>, 375 F.3d 206, 219 (2d Cir. 2004);
<u>Gibson v. Am. Broad. Co., Inc.</u>, 892 F.2d 1128, 1132 (2d Cir.
1989).  Only disputes over material facts which might affect the
outcome of the suit under the governing law preclude the entry of

summary judgment.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Moreover, a dispute of fact is not "genuine," and does not preclude the entry of summary judgment, if the evidence is not sufficient to permit a jury to find in the moving party's favor.  Id.  "The mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  Id. at 252; see Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc., 404 F.3d 566, 574 (2d Cir. 2005).

The plaintiff does not credibly question the thoroughness of the CIA's search for documents in its possession and responsive to her request regarding "Daniel C. Dennett."  The gravamen of her complaint is that the CIA has refused to release all requested records in their entirety.  See Complaint at 5 ("plaintiff requests that this court: 1. Order defendant to disclose and release the requested records in their entirety. . ."); see also Plaintiff's Memorandum (Paper 25) at 8 (plaintiff claims CIA search was inadequate because the CIA has not "explained" whether its search included other "numerical" or "code" names); Defendant's Reply (Paper 29) at 5 (defendant explained that records linked by her father's code names would be with other agencies, such as the State Department).

"In a suit brought to compel production, an agency is entitled to summary judgment if no material facts are in dispute and if it demonstrates that each document that falls within the class requested either has been produced . . . or is wholly exempt from the Act's inspection requirements." <u>Students Against Genocide v. Dep't of State</u>, 257 F.3d 828, 833 (D.C. Cir. 2001) (citations and quotations omitted).  Furthermore, in cases involving national security, courts must afford "substantial weight" to agency affidavits detailing the nature and extent of its production.  <u>Id.</u>

In support of its Motion for Summary Judgment, the defendant has produced a declaration from Information Review Officer Marilyn Dorn which is entitled to "substantial weight," <u>id.,</u> and a <u>Vaughn</u> index in which it explains why it refused to release two documents and only partially released 246 documents.  <u>See</u> Dorn Declaration at para. 45.  In her declaration, Ms. Dorn also outlines the procedures undertaken to locate documents responsive to plaintiff's FOIA request and the reasons particular documents were redacted or withheld, as well as the legal and statutory authorities which provided the basis for those determinations. <u>See</u> <u>id.</u> at para. 46 <u>et</u> <u>seq.</u>

The CIA relies on two FOIA exemptions, found in 5 U.S.C. §§ 552(b)(1) and (b)(3).  Section 552(b)(1) indicates the CIA is exempted from disclosing material that is: "(A) specifically

authorized under criteria established by an Executive Order to be kept secret in the interest of national defense or foreign policy and (B) [is] in fact properly classified pursuant to such executive order."  The defendant has determined the withheld information in this matter falls into one or both of the following categories identified under applicable Executive Order 12958, reprinted as amended in 50 U.S.C. § 435: (1) intelligence activities (including special activities), intelligence sources or methods, or cryptology; or (2) foreign relations or foreign activities of the United States, including confidential sources.

Similarly, Section 552(b)(3) states an agency does not have to disclose material "specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld."  "[T]he National Security Act of 1947, which calls for the Director of Central Intelligence to protect intelligence sources and methods, clearly . . . qualifies as a withholding statute under Exemption 3."  CIA v. Sims, 471 U.S. 159, 167 (1985) (citations and quotations omitted).  However, "[a]gency records are protected under § [552(b)(3)] only to the extent they contain 'intelligence sources

and methods' or if disclosure would reveal otherwise protected information." Id. at 168.

The defendant maintains most of the information falls within the exemption provided by § 552(b)(3). See generally Dorn Declaration at paras. 49 et seq. The CIA Director's authority to withhold such information is broad; in fact, the agency "has the power to withhold superficially innocuous information on the ground that it might enable an observer to discover the identity of an intelligence source." Id. at 178.

According to Ms. Dorn, the need to protect intelligence sources, even sources which are decades old, supports the agency's decision to withhold the information. In relevant part, she states:

> Human intelligence sources can be expected to furnish
> information to the CIA only when they are confident
> that CIA can and will do everything in its power to
> ensure that their cooperation will forever remain
> secret. In the case of a foreign national who has been
> cooperating with the CIA, disclosure of that
> cooperation could cause the target government to take
> retaliatory action against that person, or, if he is no
> longer alive, against surviving family and friends.
> Even more importantly, such disclosure places in
> jeopardy every individual with whom the foreign
> national has had contact. Thus, one intelligence
> source's indiscretion can ravage an entire spectrum of
> sources: the damage occasioned by one can be
> incalculable for many. . . . An official acknowledgment
> of [contact with an agent] could jeopardize the
> sources' career, family, or even his life. Therefore
> CIA's betrayal of an intelligence source's
> confidentiality would seriously damage this nation's
> ability to retain present, and recruit new, sources.

Paper 13 at paras. 53-54.

In addition, Ms. Dorn explains the need for withholding information to prevent disclosure of intelligence methods:

> Generally, intelligence methods are the means by which an intelligence agency accomplishes its mission. . . . Intelligence methods must be protected in situations where a certain capability or technique, or the application thereof, is unknown to those individuals or entities that would take countermeasures.  Secret information-collection techniques, capabilities, or technological devices are valuable (from an intelligence-gathering perspective) only so long as they remain unknown. . . . We know that foreign intelligence services have the capacity and ability to gather information from myriad sources, analyze it, and deduce means and methods (from disparate and even seemingly unimportant details) to defeat CIA collections efforts. . . . Thus, even seemingly innocuous, indirect references to an intelligence method could have significant adverse effects when juxtaposed with other publicly-available data.

Paper 13 at paras. 58-61.

The plaintiff maintains the CIA's Vaughn index and the Dorn Declaration are insufficiently detailed and therefore require a decision in her favor.  The defendant, however, has explained the search it made for documents responsive to plaintiff's request. It has provided a sufficiently detailed justification for each document it claims is partially or fully exempt from disclosure. The record, moreover, contains no indication of bad faith on the part of the agency.  Under these circumstances, the CIA has met its burden of demonstrating compliance with the FOIA.  See Wheeler v. CIA, 271 F. Supp. 2d 132, 137-139 (D.D.C. 2003) (discovery is unavailable in FOIA actions where, inter alia, the agency has provided affidavits and has not been shown to have

acted in bad faith); accord Assassination Archives and Res. Center v. CIA, 177 F. Supp. 2d 1, 6-7 (D.D.C. 2001)(Agency must show the document logically falls within exemption.), aff'd, 334 F.3d 55 (D.C. Cir. 2003).

In addition, the plaintiff argues some of the information she seeks is excessively old and, in any event, has already been released in other forums.  Contrary to the plaintiff's suggestions, the broad authority to withhold disclosure under § 552(b)(3) is circumscribed neither by the age of the information nor the fact that it already has been partially or fully disclosed.  See, e.g., Halpern v. FBI, 181 F.3d 279, 294 (2d Cir. 1999) ("the passage of many years is an insufficient reason to require the release of document"); Hudson River Sloop Clearwater, Inc. v. Dep't of Navy, 891 F.2d 414, 421 (2d Cir. 1989) (waiver of FOIA exception requires "official" disclosure of specific information sought).

"The fact that some 'information resides in the public domain does not eliminate the possibility that further disclosures can cause harm to intelligence sources, methods and operations'."  Students Against Genocide, 257 F.3d at 835 (citation omitted).  Here, the agency's affidavit provides a credible description of the risks involved in some of the information and names plaintiff seeks.  In the absence of demonstrated bad faith or other abuse of discretion, the CIA's

determination that release of information would cause harm to intelligence sources and methods is entitled to prevail.  See Knight v. CIA, 872 F.2d 660, 665 (5th Cir. 1989); see also Students Against Genocide, 257 F.3d at 835-36.

The Defendant's Motion for Summary Judgment is GRANTED.

SO ORDERED.

Dated at Brattleboro, Vermont, this 26th day of July, 2006.

/s/ J. Garvan Murtha
J. Garvan Murtha
United States District Judge